**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America,** | : | |
| **Plaintiff,** | : | |
| **vs.** | : | **Case No.  2:19-cr-158(5)** |
| **Brisco Dawkins,** | : | **Judge Michael H. Watson** |
| **Defendant.** | : | |

## SENTENCING MEMORANDUM

***INTRODUCTION:***

Now comes the Defendant, Brisco Dawkins, by and though counsel, and states his reasons for requesting a sentence of time served for his robbery conviction.

Brisco is 53 years-old.  (Pre-Sentence Investigation Report [PSIR] ¶ N/A, page 3). He is a diabetic and disabled. (PSIR ¶ 80).   A car accident in 2011 resulted in the amputation of his left leg. (Id. ¶ 75).  He has been in custody at the Franklin County Jail since his arrest on July 19, 2019. (PSIR, page 1). His 18 months of incarceration in Franklin County's overclouded and often unsanitary jail has been a nightmare. He contracted COVID-19 sometime in September of 2020 and was hospitalized on a ventilator for two weeks. At the same time, Brisco developed cellulitis in his right (remaining) leg. He spent approximately three months in a rehabilitation facility after being taken off life support. He is now confined to a wheel chair. (PSIR ¶ 82).  In short, Brisco has done very hard-time. This is especially true in comparison to similarly situated defendants and as compared to serving time at a Federal Bureau of Prisons facility. Defense counsel

1

advocates that Brisco's 18-months of incarceration, under these conditions and circumstances, mitigate toward a sentence of time served for his robbery conviction.

**STANDARD OF REVIEW:**

When sentencing an offender in the post-*Booker* era, the District Court considers the applicable advisory sentencing guidelines range as well as the other factors listed in 18 U.S.C. §3553(a). The §3553(a) factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, pertinent policy statements issued by the Sentencing Commission, and the need to avoid unwarranted sentence disparities. The objective of this process is to reach a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing listed in §3553(a)(2). *United States v. Lanesky*, 494 F.3d 558, 561 (6th Cir. 2007).

The District Court begins by correctly calculating the applicable advisory guideline range. *Gall v. United States*, 552 U.S. 38, 52, (2007). After giving the parties an opportunity to argue and recommend an appropriate sentence, the district court must consider the remaining §3553(a) factors to determine whether they support the recommended sentence. *Gall*, at 49. The court may not presume the guideline range is reasonable; rather, it must make a fact-based individualized assessment. *Id*. at 50; *Nelson v. United States,* 555 U.S. 350 (2009).

**~STATUTORY CONSIDERATIONS~**

18 U.S.C. §3553(a) provides:

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

***HISTORY & CHARACTERISTICS***

Brisco Dawkins' life is the result of a disabling history of childhood abuse and trauma. (PSIR ¶¶ 70-72). When he was four years-old, his heroin addict mother abandoned him and his young sister at a police station in Queens, New York. She told her little children to walk into the police station and tell the officers that they were lost. (Id.). After that day, Brisco and his sister were separated and placed in different foster-care homes. (Id.). He never saw his sister again.

Brisco's father was a human trafficker. His mother died of a heroin overdose at age 30. (Id.). Brisco described his father as an "older, bad guy, who did bad things." (Attorney Notes from PSIR Interview of August 18, 2020).

While housed in New York City's Children's Village group home, Brisco was horribly abused. He was between the ages of 12 and 13 at the time. The details of that abuse are in his sealed Pre-Sentencing Investigation Report. (PSIR ¶ 72). He admitted that he has "a lot of anger and rage over his [childhood]." Nightmares persistent to this day for Brisco. He has never received treatment for his abuse. (Attorney Notes from PSIR Interview). By the end of telling the Probation Officer this history, Brisco was sobbing.

The nightmare of his youth was only abated by his joy for playing basketball. He described himself as a basketball "star," graduating from Martin Van Buren High School in 1986. (PSIR ¶ 85; Attorney Notes from PSIR Interview).

Lastly, Brisco's life has produced some good for the world. He has four adult sons who are all in service careers. One son is a firefighter in New York City, and his other three sons are members of the United States Army. (PSIR ¶ 74). Brisco's wife stated that he has been an excellent father to all of his children, and was very involved and

3

participated in their school functions. (Id. ¶ 76). His oldest daughter, Tia, told the Probation Officer that her father is an otherwise shy, loving man who is supportive of his children. Yet, she reported concerns for his mental health, saying he appeared depressed after his leg was amputated, considering his lifelong passion for playing basketball. (Id. ¶ 77).

## *NATURE & CIRCUMSTANCES*

Due to the trauma he experienced as a child and having never received treatment, it is not surprising Brisco became a severe addict.[1] (PSIR ¶ 83; Attorney Notes from PSIR Interview). Prior to the events that brought him before this Court, Brisco was at his lowest, gambling 14 to 20 hours a day. He would spend all this time at mostly internet cafes that were open 24 hours a day, seven days a week. He would gamble between $1,500 to $2,000 a day, until the money was gone. (Id. ¶¶ 18 & 83). He was skipping meals, not wise for a diabetic, and sold all of his possessions to support his gambling addiction. He even sold drugs in the past to support his compulsive behavior. (Id. ¶ 83).

In the valley of this nightmare, he was approached by one of his co-defendant's, who was the son of a friend of Brisco's. He was offered a chance to make some "easy money" in exchange for information about the routine of the employees at the internet cafe Planet Jackpot. Brisco was desperate, so he agreed to provide the information. (PSIR ¶¶ 17-20).

Brisco has expressed the deepest remorse this counsel has ever seen in a

---

[1]Unlike so many victims of childhood abuse and neglect who turn to narcotics, Brisco's way to self-medicate his anger and anxiety was through gambling. Neuro-imaging studies have shown that the same brain pathways involved in drug addiction cravings are the same areas activated in the brains of compulsive gamblers. "*Neural substrates of cue reactivity and craving in gambling disorder.*" Translational Psychiatry, 2017. Imperial College London; source: https://www.sciencedaily.com/releases/2017/01/170103101751.htm (Accessed 1/29/2021).

defendant. Brisco has repeatedly expressed profound regret and acceptance of responsibility for his involvement in this case, often through tears. He desperately wants treatment for his gambling addiction and to address the psychological roots for his actions. It is undersigned counsel's opinion that Mr. Dawkins most likely suffers from, *inter alia*, Post-Traumatic Stress Disorder and impaired frontal lobe development (the seat of executive function and impulse control). A neuropsychological exam and brain imaging would be needed bear out these suspicions.

**(2)** the need for the sentence imposed

    **A.** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

The requested sentence of time served for his robbery conviction is sufficient but not greater than necessary to accomplish this goal of 18 U.S.C. § 3553(a). He current jail time credit is only 9 months shy of the low end of his advisory guideline range of 27 to 33 months. By the time he is transferred out of the Franklin County Jail, is shipped to Oklahoma for processing and then housed, hopefully in a full-time medical facility, he will only be a few months away from serving 27 months. In light of the mitigating factors leading to him committing his crimes, nearly dying of COVID-19 while incarcerated and then losing the use of his right leg, confining him to a wheel chair, the time he has served for his role in the robbery is sufficient for accomplishing the statute's sentencing goals.

    **B.** to afford adequate deterrence to criminal conduct;

Brisco will be serving a mandatory seven-year prison sentence. This will provide more than adequate deterrence to his, or others', future criminal conduct.

**C.** <u>to protect the public from further crimes of the defendant</u>;

As he will be serving a lengthy prison term, Brisco will not be able to commit further illegal acts and will be receiving treatment for his gambling addiction, which will better prepare him for release after serving that sentence.

**D.** <u>to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>;

Brisco is in desperate need of addiction counseling and treatment. The structured and safe environment of a medical facility within the BOP will provide the needed medical/ psychological care he needs.

**(3)** <u>the kinds of sentences available</u>;

The Court is now permitted to consider arguments that the applicable guidelines fail to properly reflect §3553(a) considerations, reflect an unsound judgment, do not treat defendant characteristics in the proper way, or that a different sentence is appropriate regardless. *Rita v. United States*, 551 U.S. 338, 351, 357 (2007). Judges "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines. "*Kimbrough v. United States*, 552U.S.85,101(2007)(internal quotation marks and citations omitted).

Here, counsel is requesting the Court deviate from the guidelines and sentence Brisco to time served for his robbery conviction, so he may start serving his mandatory minimum sentence for the firearm conviction. Brisco has accepted responsibility for his actions and is as remorseful as any defendant undersigned counsel has ever represented. (PSIR, ¶¶ 23-24).

**(4)**   <u>the kind of sentence and the sentencing range established for</u>

   **A.**   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–

   **(I)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

   **(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; * * *

Again, the defense is requesting a sentence outside the guideline range for the reasons stated above and below

**(5)**   <u>any pertinent policy statement</u>

   **A.** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

   **B.** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(Please See Below: *Grounds for Departure and Variance*).

**(6)**   <u>the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;</u>

A  sentence of time served would not be disparate from similarly situated robbery defendants, who did not participate in the robbery itself and did not consent to the use of a gun, yet provided information to assist in the timing of the robbery.  The more serious nature of co-defendants  brandishing a gun, which Brisco has accepted responsibility for,

will result in a mandatory term of incarceration in addition to his advisory guideline sentence for the robbery itself. Therefore, a sentence of time served in light of an advisory guideline range of 27-33 months would not be unjust to similarly situated defendants. Those other defendants would also be suffering from a significant mental illness, have suffered almost countless adverse childhood experiences, almost died due to a COVID-19 infection contracted while in pre-trial incarceration, and who are now confined to a wheel chair due to the apparently inadequate medical care from his jailors. For these reasons, and those outlined above and discussed below in *Grounds for Departure and Variance*, a sentence of time served would not be disproportionate to similarly situated defendants.

**(7)** <u>the need to provide restitution to any victims of the offense</u>.

There is a relatively small amount of restitution in this case.

*~OBJECTIONS TO PSIR~*

There were no objections to the PSIR's calculation of the advisory guidelines. Brisco's offense level is 17. With a Criminal History Category of II, his advisory guideline range is 27 to 33 months for his robbery conviction. This range is in addition to the mandatory seven-year prison sentence for his firearm conviction. (PSIR ¶¶ 25-39; ¶ 63).

***GROUNDS FOR DEPARTURE AND/OR VARIANCE:***

Counsel for the defense argues that there are five grounds for a departure and/or variance. As the guidelines are advisory, the Court is free to consider any factors it deems relevant in crafting a sentence that is sufficient but not greater than necessary to achieve the goals of 18 U.S.C. § 3553(a).

The **first ground** for departure or variance is **§ 5H1.3 – Mental And Emotional Conditions**.  Due to the significant abuse and neglect Brisco suffered as a child, he has struggled with anger and depression his whole life. Even now, at 53 years-old, he still has nightmares from those experiences.  Defense counsel suspects Brisco has PTSD and most likely developmental damage to his frontal lobes, leading him to self-medicate with the behavioral addiction of gambling.

Therefore, it is respectfully stated that a downward departure is warranted under § 5H1.3, as Brisco has mental and emotional deficits that impaired his decision making abilities at the time of his offense.

The **second ground** is related in part to the first ground for departure. It is found in **§ 5H1.4 – Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction.**  Though the guideline specifically states that gambling is not a reason for a downward departure, this is an unreasonable policy statement. Gambling Disorder  is listed in the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders, providing more than enough rational basis for this Court to disregard the guideline recommendation.   Moreover, the guideline runs contrary to established neuroscience.  Gambling addicts have  the same frontal lobe malfunction as drug addicts, who are equally impaired in their ability to deal with stress and control impulses, yet are eligible for consideration of a downward departure. Brain science explains that Brisco's condition is undoubtably due, in large part, to an organic brain disorder that he did not chose to have.

Moreover, other district courts have recognized gambling disorder as grounds for

a downward departure. *United States v. Caspersen*, No. 16-cr-0414 (S.D.N.Y. Dec. 7 2016) (District Court Judge was very familiar with brain disorders and susceptibility to criminal behavior, as a founding member of the MacArthur Foundation Project on Law and Neuroscience); *and, United States v. Dikiara*, 50 F. Supp. 3d 1029, 1032 (E.D. Wis. 2014)(District Court in comparing gambling addiction to substance addiction found that both disorders "diminish the addict's capacity to evaluate and control his or her behaviors." *Id*.).

On top of his gambling addiction, Brisco only has one leg. And, due to the damage of cellulitis to his remaining leg, he is now confined to a wheel chair, placing him at great risk for being assaulted and abused by other inmates.

Both his gambling disorder – a medically recognized and validated mental health disease – and his physical disability form a strong justification for downward departure in this case.

The **third ground** for departure is found in **§ 5H1.12 – Lack Of Guidance As A Youth And Similar Circumstances**.  Even though lack of guidance as a youth and similar circumstances under U.S.S.G. § 5H1.12, including a "disadvantaged upbringing are not relevant grounds in determining whether a departure is warranted," it is respectfully stated that they may be grounds for a variance under 18 U.S.C. § 3553(a).   Brisco was abandoned by his mother at age four with his sister at a Queen's New York police station. He never saw his sister again. He was bounced from foster home to group home and back again, where he suffered horrendous abuse that was never treated and from which he has never recovered. His mother was a heroin addict who died of a drug overdose and his

father was a "bad guy who did bad things," running a prostitution ring. The psychological and brain development damage these adverse childhood experiences had on Brisco cannot be overstated.[2]

The **fourth ground** for departure is **§ 5H1.6 – Family Ties and Responsibilities.** As stated above, Brisco is a very devoted father. In addition to his adult children, he has three young children ages 12, 11 and five. (PSIR ¶ 73). Brisco has supported them financially as best he could. Perhaps of greater value though is that Brisco has been a loving father to his children. He was very involved in their daily lives and school activities. (Id. ¶¶ 76-77). The sooner he can return to his family and his youngest children, who will be young adults by then, the better his children's chances will be at leading a more normal life.

The **fifth ground** for departure is found in **§ 5K2.13 – Diminished Capacity.** This guideline suggests a downward departure might be warranted if the defendant was 1) suffering from a significantly reduced mental capacity, and 2) that condition significantly contributed to the commission of the offense. Brisco was at the lowest point of his gambling addiction prior to this offense. He was gambling 14 to 20 hours a day and skipping meals. His Type II diabetes was not being properly controlled as a result. This had a dramatic impact on his mental clarity and decision making skills. These factors, in addition to those addressed above, lead to a diminished capacity to make rational decisions.

---

[2] Please see the CDC's explanation of *Adverse Childhood Experiences* and how children who suffer several different types of trauma are at an exponentially greater risk of mental health disease and becoming involved in the criminal justice system later in life. https://www.cdc.gov/vitalsigns/aces/index.html (Accessed Jan. 29, 2021).

The **sixth and final ground** for departure is supported by **§ 5K2.0(a)(4) & (c) –**

**Multiple Circumstances.**

> **§ 5K2.0(c) – * * * Departures Based on Multiple Circumstances:**
>
> The court may depart from the applicable guideline range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure, only if--
>
> (1) such offender characteristics or other circumstances, taken together, make the case an exceptional one; and
>
> (2) each such offender characteristic or other circumstance is--
>
> > (A) present to a substantial degree; and
> >
> > (B) identified in the guidelines as a permissible ground for departure, even if such offender characteristic or other circumstance is not ordinarily relevant to a determination of whether a departure is warranted.

This Court is free to consider the above factors in combination, as part of its analysis under §3553(a). Counsel respectfully states that the interconnection of the preceding five grounds with each other support a downward adjustment from the advisory guideline range.

## CONCLUSION

Counsel for Defendant respectfully requests a sentence of time served for Brisco's robbery conviction. He will thereafter be serving a mandatory seven-year sentence for his §924(c) conviction. Such a sentence will be "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a), for a 53 year-old defendant handicapped with mental illness and physical disabilities that confine him to a wheel chair.

Respectfully Submitted,

/s/ Andrew P. Avellano
ANDREW P. AVELLANO (0062907)
Counsel for Brisco Dawkins
4181 E. Main Street
Columbus, Ohio 43213
(614) 237-8050, phone
(614) 237-3505, facsimile
E-mail: drewavo@wowway.com

## CERTIFICATE OF SERVICE

The under signed hereby certifies that a true and accurate copy of the foregoing was served upon Roger Dinh, Assistant U.S. Attorney 303 Marconi Blvd., Suite 200, Columbus, OH 43215, this 30th day of January 2021 via electronic mail delivery.

/s/ Andrew P. Avellano
ANDREW P. AVELLANO, Esq.
Counsel for Defendant